UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SR PARTNERS HULEN, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:10-CV-437-B |
| | § | |
| JPMORGAN CHASE BANK, | § | |
| NATIONAL ASSOCIATION, | § | |
| | § | |
| Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| FEDERAL DEPOSIT INSURANCE | § | |
| CORPORATION, AS RECEIVER FOR | § | |
| WASHINGTON MUTUAL BANK, | § | |
| | § | |
| Intervenor. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Plaintiff SR Partners Hulen's Motion for Summary Judgment (doc. 21), filed January 28, 2011, Intervenor FDIC's Motion to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure (doc. 24), filed February 18, 2011, Intervenor FDIC's Motion for Summary Judgment (doc. 27), filed February 18, 2011, and Defendant JPMorgan Chase Bank's Motion for Summary Judgment (doc. 35), filed February 18, 2011. Having considered the Motions, the Court **DENIES** Intervenor FDIC's Motion to Dismiss, Intervenor FDIC's Motion for Summary Judgment, and Defendant JPMorgan Chase Bank's Motion for Summary Judgment. The Court further **GRANTS** in part and **DENIES** in part Plaintiff SR Partners Hulen's Motion for Summary Judgment.

# I.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

This case arises from a lease dispute involving Plaintiff SR Partners Hulen, Inc. ("Plaintiff"), Defendant JPMorgan Chase Bank ("Chase"), and Intervenor FDIC as Receiver for Washington Mutual Bank ("WAMU"). On April 9, 2008, Plaintiff, as lessor, and WAMU, as lessee, entered into a lease agreement related to real property located in Tarrant County, Texas. (Pl.'s Original Compl. 5). The lease was entered into with the purpose of using the property in the future as banking premises. (FDIC's Original Ans. & Countercls. 9-10). Before construction on the property was completed, however, the Office of Thrift Supervision of the Treasury Department declared WAMU insolvent and appointed the FDIC as Receiver for the bank. (Pl.'s Original Compl. 5, 9; FDIC's Mot. Interv. 2).[2] As Receiver, the FDIC assumed all of WAMU's assets and liabilities, including the lease, and succeeded WAMU as a tenant under the lease. (Pl.'s Br. in Supp. of Mot. Summ. J. 3).

On the same day that the FDIC was appointed as Receiver for WAMU, it also executed a Purchase and Assumption Agreement (the "PAA") with Chase. (Pl.'s Original Compl. 6). The purpose of the PAA was to arrange for payment to the insured depositors of WAMU and to reopen the bank with minimal interruption in banking operations, all at no loss to WAMU's depositors. (FDIC's Original Ans. & Countercls. 7). Under the PAA most, but not all, of WAMU's assets and liabilities were assumed by Chase. (FDIC's Br. in Supp. of Mot. Dismiss 1). Of particular import,

---

[1] The Court takes its factual account from those uncontested factual allegations contained in the parties' papers and pleadings. Any contested fact is identified as the allegation of a particular party.

[2] The Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) provides the statutory basis for the FDIC's appointment as Receiver for WAMU. *See* 12 U.S.C. § 1821(c), (d)(2)(G).

Chase did not automatically assume the property interests classified as "Bank Premises"[3] under the PAA, instead having the option to either accept or reject any "Bank Premises" property. (PAA § 4.6). All other property interests constituted "Other Real Estate,"[4] which Chase did automatically assume under the PAA. (*Id.* § 3.1; *see generally* Chase's Stipulation (doc. 62)). Chase and the FDIC contend that the WAMU lease constituted "Bank Premises" property that Chase had the option to accept or reject. Plaintiff, on the other hand, contends that the lease is "Other Real Estate" which Chase automatically assumed under the PAA.

Purportedly acting on its belief that the lease at issue was "Bank Premises" under the PAA, Chase chose to reject the assignment of the lease. (FDIC's Original Ans. & Countercls. 10). Chase then gave notice of its rejection to the FDIC, in accordance with the terms of the PAA. (*Id.*; *see generally* Pl.'s Br. in Supp. of Resp. to FDIC's Mot. Summ. J.). The FDIC, believing that Chase had properly rejected the lease and thus that it remained an FDIC liability, elected to repudiate the lease pursuant to its authority under FIRREA on February 5, 2009.[5] (FDIC's Original Ans. & Countercls. 12).

On March 3, 2010, Plaintiff filed a Complaint alleging breach of lease by Chase (doc. 1). Chase answered on April 15th (doc. 3). The FDIC followed with a Motion to Intervene under Rule

---

[3]The PAA defines "Bank Premises" as "the banking houses, drive-in banking facilities . . . and land on which the foregoing are located, that were owned or leased by [WAMU] and that are occupied by [WAMU] as of the Bank Closing." (PAA § 4.6).

[4]The PAA defines "Other Real Estate" as "all interests in real estate (other than Bank Premises and Fixtures) including but not limited to mineral rights, leasehold rights, condominium and cooperative interests, air rights and development rights that are owned by [WAMU]." (PAA § 3.1).

[5]*See* 12 U.S.C. § 1821(e). The FDIC may repudiate the lease upon concluding that the lease is "burdensome" and the disaffirmance of it would promote the orderly institution of the failed bank's affairs.

24(a)(2) of the Federal Rules of Civil Procedure (doc. 5). In its Original Answer and Counterclaims (doc. 13), the FDIC asserted, as had Chase in its Answer, that the Plaintiff lacked standing to interpret the PAA and sought a declaratory judgment that the FDIC had timely repudiated the lease and owed no damages. (FDIC's Original Ans. & Countercls. 7-13).

On April 20, 2010, the parties filed a Joint Motion to Stay Proceedings in anticipation of the Fifth Circuit Court of Appeal's interlocutory review and resolution of a factually similar case posing identical legal issues. (*See generally* Agreed Mot. Stay (discussing *290 at 71, LLC v. JP Morgan Chase Bank NA*, No. 1:09-CV-00576-SS, 2009 WL 3784347 (W.D. Tex. Nov. 9, 2009))). This Court granted the Motion, staying the case on April 28, 2010 (doc. 12). While that appeal was pending before the Fifth Circuit, the parties in that case reached a settlement and accordingly sought and received the Fifth Circuit's dismissal of the appeal as moot on December 20, 2010. (Pl.'s Notice of Dismissal of Related Case ¶¶ 4-5). As a result, the Court lifted the Stay in the instant case on December 30, 2010 (doc. 17).

On January 28, 2011, Plaintiff moved for summary judgment (doc. 21), asserting that its lease with WAMU constituted "Other Real Estate" property assumed by Chase under the PAA and that Chase breached this lease by failing to perform its obligations under the lease. (*See generally* Pl.'s Mot. Summ. J.). The FDIC and Chase filed cross motions for summary judgment (doc. 27 & 35), claiming that Plaintiff lacks standing to challenge their interpretation of the PAA or even present its own interpretation of the assignment agreement to the Court. Failing that argument, the FDIC and Chase maintain, that the lease constitutes "Bank Premises" property that Chase rejected and the FDIC later repudiated under FIRREA. (*See generally* Chase's Br. in Supp. of Mot. Summ. J.; FDIC's Br. in Supp. of Mot. Summ. J.). The FDIC additionally filed a Motion to Dismiss for want

of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, realleging its arguments that Plaintiff lacks standing to interpret the PAA in the first place. (*See generally* FDIC's Mot. Dismiss). The parties have filed their Responses and Replies to these motions, which are now ripe for the Court's consideration.

## II.

## LEGAL STANDARDS

A. *Motions to Dismiss under Rule 12(b)(1)*

A court must address a challenge to subject matter jurisdiction before turning to the merits of a case. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (stating that a court must address Rule 12(b)(1) challenge to jurisdiction before dealing with other Rule 12 motions). A complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). Standing is a required element of subject matter jurisdiction and is therefore properly challenged on a 12(b)(1) motion to dismiss. *See Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989). The burden of proof on a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *See Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984).

The Court has the power to dismiss under Rule 12(b)(1) based on any of (1) the complaint alone, (2) the complaint supplemented by undisputed facts in the record, and (3) the complaint supplemented by the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1989). When a defendant raises a "facial attack" on subject matter jurisdiction, one based on the complaint alone or the complaint supplemented by disputed facts, "the plaintiff is left with

safeguards similar to those retained when a 12(b)(6) motion to dismiss for failure to state a claim is raised—the court must consider the allegations in the plaintiff's complaint as true." *Id.* at 412.

When considering a "factual attack," one based on the complaint and some disputed fact or facts, however, a court's authority under Rule 12(b)(1) extends well beyond that conferred by Rule 12(b)(6) or ever Rule 56—the court has the additional power to resolve factual issues in order to determine if it has jurisdiction to hear the case. *Id.* at 412-13. If a court rests its decision upon the resolution of disputed facts, it must both "identify and explain the factual determinations it has made." *Id.* at 413-14. Furthermore, before dismissing a case under Rule 12(b)(1) based upon its factual determinations, a court must first afford the plaintiff "an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." *Id.* at 414.

B.     *Motions for Summary Judgment*

The purpose of summary judgment is "to enable a party who believes there is no genuine dispute as to a separate fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Accordingly, Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[6] The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[6]The Court cites to the amended Rule 56, which became effective on December 1, 2010. This amendment governs any action filed after December 1, 2010 as well as any proceeding in an action pending as of December 1, 2010, unless the Supreme Court specifies otherwise or a court determines application of the amendment would be infeasible or unjust. FED. R. CIV. P. 86(a). The Court finds no reason the amendment should not govern this case. Accordingly, all citations to Rule 56 in this Order are to the amended version of the Rule effective as of December 1, 2010.

(1986).

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.* When the movant bears the burden of proving an affirmative defense at trial, "it must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (citing *Martin v. Alamo Cmty. Coll. Dist.*, 35 F.3d 409, 412 (5th Cir. 2003)).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Little*, 37 F.3d at 1075. Nevertheless, a non-movant may not simply rely on the Court to sift through the record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant does provide must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This evidence must be such that a jury could reasonably base a verdict in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d

at 1075.

## III.

## ANALYSIS

A.  *FDIC's Motion to Dismiss*[7]

Before addressing the merits of the parties' motions for summary judgment, the Court must determine whether it has subject matter jurisdiction over the case. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). One of the requirements for subject matter jurisdiction is that a plaintiff must have standing to file suit in the first instance. *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989). For example, to establish standing in a breach of contract case, a plaintiff ordinarily must prove that he is either 1) an "actual part[y]" to the contract or 2) an intended third-party beneficiary of the contract. *RTC v. Kemp*, 951 F.2d 657, 662 (5th Cir. 1992); *see also Dairyland Cnty. Mut. Ins. Co. of Tex. v. Childress*, 650 S.W.2d 770, 775 (Tex. 1983). In the context of landlord–tenant law, a plaintiff may also establish standing through the "universal rule" that a full assignment of a lessee's interest establishes privity of *estate* between the assignee and the lessor. *See Thomas v. U.S.*, 505 F.2d 1282, 1286 (Ct. Cl. 1974); *Amco Trust v. Nayler*, 317 S.W.2d 47, 50 (Tex. 1958). Privity of estate in the landlord–tenant context arises when a lessee assigns its *entire* leasehold estate to another party, with that assignee "becom[ing] the tenant in place of the lessee." *Amco Trust, Inc. v. Naylor*, 317 S.W.2d 47, 50 (Tex. 1958).

i.  The Parties' Arguments

The parties do not dispute that the FDIC was in privity of estate with Plaintiff prior to the

---

[7]Those portions of the parties' summary judgment briefing that address whether this Court has jurisdiction are also considered alongside the FDIC's Motion to Dismiss.

signing of the PAA. Specifically when the FDIC was appointed as Receiver for WAMU it succeeded WAMU as lessor and became a party to the lease with Plaintiff. (Pl.'s Br. in Supp. of Resp. to Mot. Dismiss 3; FDIC's Reply in Supp. of Mot. Dismiss 5). Where the parties' positions diverge, however, is on the issue of whether the PAA created a similar relationship between Plaintiff and Chase as was that between Plaintiff and the FDIC. Plaintiff, on the one hand, contends that the lease in question constituted "Other Real Estate" under the PAA, and thus the PAA was a full assignment of the lease from the FDIC to Chase.[8] (Pl.'s Br. in Supp. of Resp. to Mot. Dismiss 5). This assignment, according to Plaintiff, brought Plaintiff and Chase into privity of estate and, in turn, gave Plaintiff standing to institute the instant cause of action for breach of the lease against Chase. (*Id.* (citing *Amco Trust*, 317 S.W.2d at 50)).

Chase and the FDIC disagree with Plaintiff in several respects, first by raising the somewhat novel proposition that this Court may not even review the terms of the PAA on Plaintiff's behalf because Plaintiff is neither a signatory nor a third party beneficiary to the PAA and thus lacks standing to interpret or enforce the PAA. (FDIC's Br. in Supp. of Mot. Dismiss 4-5). In other words, because Plaintiff, according to Chase and the FDIC, lacks standing to enforce the terms of the PAA, Plaintiff is wholly foreclosed from even calling upon the Court to review the terms of the PAA. Following this argument to its logical extreme, even if Plaintiff's interpretation of the PAA were legally sound, this Court would not be able to consider it because the Plaintiff lacks standing to even present an interpretation of the PAA to the Court. There is scant support in the case law

---

[8]Because the parties' arguments concerning standing are based wholly on legal arguments and the proper interpretation of the PAA and not any disputed facts, this is a facial challenge to jurisdiction under Rule 12(b)(1). *See Williamson*, 645 F.2d at 413.

for such a position and no support in the binding authority.

### ii. Whether Plaintiff Has Standing to Interpret and Enforce the PAA

The question of whether a party is precluded from interpreting or enforcing an assignment agreement, where that assignment itself is the potential source of standing under privity of estate principles, has yet to be specifically addressed in any binding authority.[9]  Nonetheless, the Court finds persuasive the reasoning other Texas federal district courts that have addressed the issue and concluded that a party may rely upon an assignment agreement to which it is neither a signatory nor third-party beneficiary to establish privity of estate.  *See 290 at 71, L.L.C. v. JP Morgan Chase Bank*, No. A-09-CA-576-SS, 2009 WL 3784347, at *4 (W.D. Tex. Nov. 9, 2009); *Excel Willowbrook, LLC v. JP Morgan Chase Bank*, No. 4:09-cv-2988, at 9 (S.D. Tex. July 11, 2011).

In *290 at 71*, the court was faced with facts barely distinguishable from those at hand.  The plaintiff leased a vacant lot to Washington Mutual for purposes of building a bank house.  2009 WL 3784347, at *1.  As here, WAMU was declared insolvent, and the FDIC entered the PAA with Chase.  *Id.*  Chase then issued a letter to plaintiff, indicating that it had decided not to assume the lease.  *Id.* at *2.  Plaintiff sued, the FDIC intervened, and the parties filed cross motions for summary judgment.  *Id.*  The parties' arguments similarly centered upon whether the lease constituted "Other Real Estate" or "Bank Premises" property and whether the plaintiff had standing to even raise that issue since it was neither a signatory nor third-party beneficiary to the PAA.  *Id.*

---

[9]The parties have notified the Court of several recent opinions from the Texas Supreme Court and other federal district courts (doc. 66, 71, 72).  To the extent the parties ask the Court to consider these opinions in its decision, the parties' requests are **GRANTED**.  To the extent either party intends the Court to be bound by these opinions, such request is **DENIED**, as the opinion is either non-binding or not directly on point.

In rejecting Chase and the FDIC's arguments that the plaintiff lacked standing to even offer its interpretation of the PAA to the Court—and was thereby precluded from enforcing its terms—the court described a resulting "catch-22 that would keep Plaintiff from asserting its rights under the Lease against the new Lessee even if a valid assignment of the Lease did occur." *Id.* at 4. The Court in *Excel Willowbrook* echoed the fears of *290 at 71*, noting that if such a scenario were allowed, "the assuming bank could freely breach any contract assigned to it, and the other party would have no recourse." No. 4:09-cv-2988, at 9.

Not only is Chase and the FDIC's position untenable for the reasons articulated by *290 at 71* and *Excel Willowbrook*, it is also illogical under settled landlord–tenant jurisprudence. A bedrock principle of landlord–tenant law is that a lessor and assignee may sue one another for enforcement of a lease when the original lessee enters a valid assignment agreement with the assignee. *See, e.g., RTC v. Cramer*, 6 F.3d 1102, 1105 (5th Cir. 1993); *Amco Trust*, 317 S.W.2d 47; *718 Assoc., Ltd. v. Sunwest N.O.P, Inc.*, 1 S.W.3d 355, 360-62 (Tex. App.—Waco 1999, pet. denied). Following Chase and the FDIC's arguments to their logical conclusion, would strip lessors of the foregoing right to sue assignees over assignment agreements in situations where the lessors were not signatories nor third-party beneficiaries to the assignment agreement. This logic effectively eliminates standing via privity of estate as a tool to enforce one's rights in the landlord-tenant context. In a word, Chase and the FDIC's position flies in the face of the landlord–tenant law, effectively barring lessors from suing assignees.

Further diluting the logic of Chase and the FDIC's position is that countless courts have taken precisely the opposite approach when deciding third-party beneficiary standing with respect to assignment agreements. Invariably, when analyzing whether a party has standing to enforce an

agreement as a third-party beneficiary, courts look *first* to the terms of the agreement itself. *See, e.g.*, *In re Moose Oil & Gas Co.*, 613 F.3d 521, 527-28 (5th Cir. 2010); Old *Stone Bank v. FDIC*, 749 F.Supp. 147 (5th Cir. 1990); *Tawes v. Barnes*, No. 10-0581, 2011 WL 1446097 at * 4 (Tex. Apr. 15, 2011). If, from the terms of the assignment agreement at issue, it is evident that a party was an intended third-party beneficiary of the agreement, the courts proceed to determine which parties' interpretation of the agreement is correct and thus in whose favor the agreement should be enforced. Even in *Old Stone Bank v. FDIC*, one of the cases upon which Chase and the FDIC rely heavily, the court looked to the terms of the PAA at issue in determining that the agreement did not give rise to third-party beneficiary standing status. *See* 749 F.Supp. 147, 148 (5th Cir. 1990).[10] There is nothing in the authority cited by Chase or the FDIC that suggests that the settled approach by courts - of looking first to the terms of the assignment agreement to decide whether a party has standing as third-party beneficiary - should be any different when deciding standing under privity of estate principles.

    ii.    <u>Whether the Lease Constituted "Other Real Estate" or "Bank Premises"</u>

Having determined that Plaintiff may base its standing on the PAA, the Court now turns to its analysis of the terms of the Agreement to determine whether Plaintiff does in fact have standing in the instant case. Plaintiff contends that the Lease constitutes "Other Real Estate" under the PAA, and thus it has standing to sue Chase for breach of Plaintiff's lease with WAMU. (Pl.'s Br. in

---

[10]In terms of privity of estate, *Old Stone* is distinguishable from the instant case because, as noted by the court in *290 at 71*, the court's analysis focused on the question of whether plaintiff was a third-party beneficiary under the PAA and did not address the issue of privity of estate. *See 290 at 71*, 2009 WL 3784347, at *6. Indeed, plaintiff Old Stone, as merely a lender on the property in dispute, was not in fact in privity of estate with New Fidelity. *Id.* Here, it is uncontroverted that if the lease at issue constituted "Other Real Estate" under the PAA, Plaintiff and Chase would be in privity of estate.

- 12 -

Supp. of Resp. to Mot. Dismiss 5). Chase and the FDIC contend that the Lease constitutes "Bank Premises" property that was never assumed by Chase, and thus there is neither privity of estate nor standing to sue for breach of the lease. (FDIC's Mot. Interv. 2; Chase's Br. in Supp. of Resp. to Pl.'s Mot. Summ. J. 11).

When construing a written instrument, the principal aim of the court is to discern the true intent of the parties as conveyed through the terms of the instrument. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311-312 (Tex. 2005). In determining the parties' intent, the Court looks to the objective intentions expressed in the contract itself. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). Thus, a contract should be construed according to its plain meaning unless the contract itself shows the parties intended a different meaning. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). The Court must be mindful that the parties to a writing will not include a clause unless they intend it to have some effect. *Westwind Exploration v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 382 (Tex. 1985). If a certain construction of the contract renders a clause meaningless, that reading is unreasonable and therefore not favored. *Id.*

If there is no ambiguity in an agreement, the court may construe the agreement as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A contract is ambiguous "when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Id.* However, when a contract can only be reasonably interpreted one way, "'[t]he failure to include more express language of the parties' intent does not create an ambiguity.'" *Instone Travel Tech Marine & Offshore v. Int'l. Shipping Partners*, 334 F.3d 423, 431 (5th Cir. 2003) (quoting *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996)).

The Court again relies on the reasoning in *Excel Willowbrook* and finds that the PAA

unambiguously classifies the lease at issue in the instant case as "Other Real Estate." The PAA defines "Bank Premises" property as "the banking houses, drive-in banking facilities . . . and land on which the foregoing are located, that were owned or leased by [WAMU] and that are occupied by [WAMU] as of the Bank Closing." (PAA § 4.6). It defines "Other Real Estate" as "all interests in real estate (other than Bank Premises and Fixtures) including but not limited to mineral rights, leasehold rights, condominium and cooperative interests, air rights and development rights that are owned by [WAMU]." (PAA § 3.1).

In focusing on the language "land on which the foregoing are located" in the definition of "Bank Premises," where "foregoing" refers to "banking houses, drive-in facilities and teller facilities," the Court observed that since the verb "are" is in the present tense, such structures had to be present as of the date of the execution of the PAA. *Excel Willowbrook*, 4:09-cv-2988, at 10-11. In order to qualify as "Bank Premises" under the PAA, the court reasoned, "one or more of the 'foregoing' structures must be physically on the land, and WAMU must have physically occupied those facilities on the date of closing." *Id.* at 11. There was no question in that case, nor is there in the instant case, that no structure was on the land at the time of the signing of the PAA. *See id.* Thus, the lease in the cases constitutes "Other Real Estate" under the PAA,[11] Plaintiff is in privity of estate with Chase, Plaintiff has standing to bring the present suit, and this Court has jurisdiction over the dispute.

Accordingly, the FDIC's Motion to Dismiss under Rule 12(b)(1) is hereby **DENIED**.

---

[11]The Court also notes that the definition of "Other Real Estate" unambiguously includes "leasehold rights." While that language does not preclude a lease from constituting "Bank Premises" (which is allowed within the definition of "Bank Premises"—"land . . . owned or leased"), its inclusion in the definition does demonstrate that certain leases do constitute "Other Real Estate."

B.  *The Parties' Motions for Summary Judgment*

The Court's analysis resolving the FDIC's Motion to Dismiss largely resolves the issues presented in the parties' Motions for Summary Judgment. Because the Court finds that Plaintiff has standing to enforce the unambiguous PAA's classification of the lease as "Other Real Estate," Chase and the FDIC's Motions for Summary Judgment are hereby **DENIED**. The Court notes that due to the fact that the PAA is unambiguous, it does not consider Chase and the FDIC's proffered parole evidence of their extra-contractual intent that the Lease constitute "Bank Premises." *See Balandran v. SafeCo Ins. Co.*, 972 S.W.2d 738, 741 (Tex. 1998).

Furthermore, Plaintiff's Motion for Summary Judgment is hereby **GRANTED in part** and **DENIED in part**. Plaintiff's Motion is **GRANTED** to the extent it seeks judgment as a matter of law as to the Lease being transferred from the FDIC to Chase under the PAA. Plaintiff's Motion is **DENIED** to the extent it seeks a sum certain in damages, as the Court finds the parties' briefing and evidence insufficient to calculate damages at this time, particularly with respect to the issue of mitigation of damages.

IV.

CONCLUSION

Based on the foregoing, the Court **DENIES** Intervenor FDIC's Motion to Dismiss (doc. 24), Intervenor FDIC's Motion for Summary Judgment (doc. 27), and Defendant JPMorgan Chase Bank's Motion for Summary Judgment (doc. 35). Furthermore, the Court **GRANTS** in part and **DENIES** in part Plaintiff SR Partners Hulen's Motion for Summary Judgment (doc. 21). Finally, the Court **GRANTS** in part and **DENIES** in part the parties' Requests for Judicial Notice (doc. 66, 71, 72).

The pretrial conference in this case remains scheduled for **September 23, 2011 at 10 a.m.**

If the parties wish to submit additional briefing regarding damages in lieu of proceeding to trial, they are **DIRECTED** to file a joint motion for leave to do so **on or before Friday, August 26, 2011**.

SO ORDERED.

DATED July 21, 2011

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE